529 F.2d 1222
 Andrew D. DEROUEN, Sr., and Agglia Penn Derouen, his wife,
individually and on behalf of their Deceased son,
Andrew D. Derouen, Jr., Plaintiffs-Appellants,
v.
VAUGHN MARINE, INC., Defendant-Appellee.
 No. 75--2325 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 April 7, 1976.
 
 Darryl J. Tschirn, Gothard J. Reck, Michael E. Coney, Metairie, La., for plaintiffs-appellants.
 Eldon T. Harvey, III, Kenneth W. Manuel, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before BROWN, Chief Judge, GEWIN and MORGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 The appellants brought this action under the Jones Act and general maritime law to recover for the drowning death of their son, Andrew Derouen, who had been employed as a deck hand aboard the M/V Cavalier, a vessel owned by the appellee, Vaughn Marine, Inc. On February 15, 1969, shortly after daybreak, the Cavalier, pushing three loaded barges, was approaching a fleet of barges in the Mississippi River at Baton Rouge. The captain instructed the deck hands to prepare to go forward on the barges being pushed in order to secure those barges to the other barges in the fleet. The decedent proceeded toward the stern of the Cavalier to procure a rope. He was not seen alive again. No one saw him go overboard, and his absence was not discovered for about forty-five minutes. A search for the decedent was unsuccessful; his body was recovered some three weeks later.
 
 
 2
 The appellants sought to predicate negligence on the part of the defendant company and/or unseaworthiness of the vessel on a variety of grounds: that the crew members did not wear life jackets; there was no handrailing on the main deck; the bulwarks were not of sufficient height to afford adequate protection; the deck had not been painted with non-skid paint; there was dew on the deck; and the Cavalier's crew should have discovered earlier that the decedent was missing and given an earlier alarm.
 
 
 3
 At the close of the evidence, after instructing the jury, the trial judge submitted the case to the jury with special interrogatories:
 
 
 4
 1. Was Vaughn Marine, Inc. negligent?2. If so, did the negligence of Vaughn Marine, Inc. play some part, however small, in causing the accident?
 
 
 5
 3. Was the M/V Cavalier unseaworthy?
 
 
 6
 4. If so, was the unseaworthiness a proximate cause of the accident?
 
 
 7
 Thereupon the jury retired. Unable to reach a verdict, the jurors requested that they be permitted to continue their deliberations the next day.
 
 
 8
 After further deliberations the next morning the foreman sent the following note to the judge:
 
 
 9
 There seems to be some question in the jury's mind as to what exactly constitutes negligence. Is it possible to get some clarification on this?
 
 
 10
 Also, one word in the second question. The question is--Did negligence cause the accident, or if the company had not been negligent would the accident have been prevented?
 
 
 11
 If possible can we have some clarification on these two points as to the law?
 
 
 12
 The trial judge summoned the jurors. In response to their first question he reinstructed them on the law of negligence. Apparently, however, the judge misread the second question, mistaking the word 'company' for the word 'captain':
 
 
 13
 Now your second question relates to the question of whether if the captain had not been negligent, would the accident have been prevented. I take that to have reference to the acts of the captain. Should he have stopped the barges? Did he exercise proper care? In deciding that question, as an example, you are to consider the surrounding circumstances--where the captain was; what he was doing; how he was occupied; and questions like that . . ..
 
 
 14
 The trial judge then proceeded to instruct the jury on causation. The jury again retired to deliberate, and returned approximately two hours later with a verdict for the defendant, having answered each interrogatory in the negative.
 
 
 15
 On this appeal the appellants assert that the 'primary thrust' of their case was the absence of a handrailing and the inadequate height of the bulwark. They argue that the trial judge's remarks in response to the jury's note directed the jurors' attention away from the primary issues of the case and focused their attention on a 'very minor allegation'[1] so as to prejudice the plaintiffs' case. They contend that the trial judge's remarks were impermissible and unwarranted comments on the evidence; they seek a reversal of the jury verdict and a remand for a new trial.
 
 
 16
 The trial judge's misreading of the jury's question does not warrant reversal. Any confusion which the mistake may have engendered was cured by the judge himself. In summarizing his supplemental instructions, he redirected the jury's attention to the owner of the vessel, Vaughn Marine, Inc:
 
 
 17
 So to repeat, in answering the question whether or not the owner of the vessel, through its officers, employees, other than the deceased was negligent, you have to ask yourselves the question, what was done that an ordinary prudent person would not have done under the same circumstances?
 
 
 18
 Moreover, the interrogatories submitted to the jury made no mention whatsoever of the captain. These interrogatories, however, did specifically refer by name to Vaughn Marine. The trial judge neither sought to be an advocate for either side, nor sought to assume the role of a witness. The possibility that the jury was confused or misled because of his misreading of the question was minimal. Accordingly, appellants' first contention is without merit.
 
 
 19
 The appellants' second contention is that in reinstructing the jury the trial judge failed to emphasize that under the Jones Act the test of proximate cause is whether the negligence of the employer contributed to the accident even in the slightest degree. See Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958, 966 (5th Cir. 1969). In his initial instructions the judge stated:
 
 
 20
 . . . (T)he burden is on the plaintiff to establish by a preponderance of the evidence either that the defendant was negligent and that the negligence played some part, however small, in causing the accident and death, or unseaworthiness which was the proximate cause of the injury and death. (emphasis supplied)
 
 
 21
 The interrogatory submitted to the jury contained identical language. Moreover, the jury never had to reach the question of causation because it concluded that the appellee had not been negligent. Appellants' second contention is therefore also without merit. The judgment of the district court is affirmed.
 
 
 22
 Affirmed.
 
 
 
 *
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 Despite the appellants' characterization of the captain's alleged negligence as a 'very minor allegation,' counsel for the appellants made the following closing argument:
 Now, in addition, the captain, Captain Denais, was on the stand. He told me something which really struck me at the time, and I hope it struck you, and that you perhaps noticed the importance of it. The captain said the entire operation took approximately forty to forty-five minutes to accomplish, to push the barges into position . . . No where in that forty to forty-five minutes did he ever say, 'Why, where is Andrew?' . . . Why didn't Captain Denais say, 'Where is Andrew? I gave him an order to go forward on those barges, and he is not there.' Was it more important to tie up those barges than to find out what happened to one of his men?
 Ladies and gentlemen, I submit to you it is more likely so than not that had the captain stopped, had he maybe cut the barges loose, he had a loudspeaker up there with him, if he had called out to Mr. Michon (a deck hand) and said 'Where is Andrew?' Why didn't he get on the horn somewhere before forty minutes had passed and said, 'Where is Andrew?' . . . I submit to you, ladies, and gentlemen of the jury, that that is negligence. That boy fell in the river, and had the vessel stopped, perhaps they could have found him right then and there and saved his life.